UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MONICA YINGER,

    Plaintiff,

vs.

SPEEDWAY LLC, *et al.,*

    Defendants.

Case No. 3:23-cv-149

District Judge Michael J. Newman
Magistrate Judge Peter B. Silvain, Jr.

---

**ORDER: (1) GRANTING DEFENDANT SPEEDWAY'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 23); AND (2) TERMINATING THIS CASE ON THE DOCKET**

---

This is a personal injury action premised on the Court's diversity jurisdiction.[1] Plaintiff Monica Yinger ("Yinger") brings this case against Defendant Speedway LLC ("Speedway"). Speedway owns and/or operates a number of gas station convenience stores throughout Dayton, Ohio. Yinger sustained an injury after tripping on a rug on Speedway's property, inside the entrance to the Speedway Store location at 1241 West North Street in Springfield, Ohio. Doc. No. 4. Yinger alleges Speedway's negligence proximately caused her fall. *Id*. at PageID 66-67. This case is before the Court on Speedway's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Doc. No. 23. Yinger responded, and Speedway replied. Doc. Nos. 25, 31. Thus, this motion is ripe for review.

---

[1] Accordingly, Ohio law controls, and this Court must apply the laws of Ohio as indicated by the Supreme Court of Ohio. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001).

1

## I. BACKGROUND

On January 10, 2019,[2] Yinger pulled into the Speedway parking lot to buy breakfast, as she often did, before she started work at Christian EduCare, a preschool across the street. Doc. No. 21 at PageID 122, 148-50. Yinger parked her car, exited, and walked toward the Speedway store entrance. *Id.* at PageID 150. As Yinger approached, she noticed Speedway was "very busy . . . [with] a lot of people . . . everywhere, because it[] [was] rush hour and . . . [t]he line was pretty long getting to the register." *Id.* at PageID 151, 154. Before she reached Speedway's transparent, windowed entrance doors, Yinger "observed her surroundings" and looked to make sure that no one was behind her or in front of her. *Id.* at PageID 150-51.

Once Yinger reached the transparent doors, she pulled the right door towards her, she looked straight ahead (not down), took two-to-three steps, then fell on Speedway's entryway rug. *Id.* at PageID 151-2. It is undisputed that the rug was a dark color, and it rest on top of a light-colored floor tile (so, it contrasted in color). *Id.* at PageID 156, 205-212. Yinger testified she tripped over the rug because "it was wrinkled on all sides" and said, "the wrinkles were very evident." *Id.* at PageID 152. Yinger knew that Speedway placed a rug at the entrance of the store. *Id.* After she fell, Yinger saw "[a]ll four sides [of the rug] were very wavy and wrinkled up." *Id.* Given Yinger's equivocation in response to Speedway's question about the height of rug's waves and construing the facts in the light most favorable to the plaintiff, a reasonable juror could disagree on how tall the waves were after the fall. *Id.*

Once Yinger was helped to her feet, she immediately felt pain in her shoulder. *Id.* at PageID 159. Yinger approached Kellenberg, the Speedway register counter attendant, to report the fall.

---

[2] Yinger timely filed a complaint against Speedway on November 4, 2020 in the Court of Common Pleas of Clark County, Ohio. Doc. No. 1 at PageID 1. On May 2, 2022, Yinger voluntarily dismissed the initial action without prejudice. *Id.* On May 2, 2023, Yinger commenced a new action in the Clark County Court of Common Pleas, and Speedway removed the case to this Court. *Id.* at PageID 1-2.

*Id.* at Page ID 159-160; Doc. No. 29 at PageID 395. Kellenberg did not see the fall. Doc. No. 29 at PageID 395. Yinger then called her husband, who took her to the hospital. *Id.* at PageID 160. At the hospital, a doctor diagnosed Yinger with a broken shoulder. *Id.*

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 Fed. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id.* (citation omitted). Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id.* at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id.*

### III. ANALYSIS

To establish a negligence claim under Ohio law, a plaintiff must establish: (1) the existence of a duty; (2) a breach of duty; and (3) causation of an injury. *Brittingham v. Gen. Motors Corp.*, 526 F.3d 272, 278-79 (6th Cir. 2008) (citing *Menifee v. Ohio Welding Prods., Inc.*, 472 N.E.2d 707, 710 (Ohio 1984)).

To bring a successful negligence claim, a plaintiff must first establish the landowner owed the land user a duty of care. The existence of a duty is a question of law for the courts to decide. *Wilson v. Big Bear Stores Co.*, No. CA93-09-070, 1994 WL 114319, at *2 (Ohio Ct. App. Apr. 4, 1994) (citing *Mussivand v. David*, 544 N.E.2d 265 (Ohio 1989)). Business invitees are owed a duty of ordinary care, but business owners do not have to protect customers from conditions "which are known to such invitee or are so obvious and apparent to such invitee that he [or she] may reasonably be expected to discover them and protect himself against them." *Wilson*, 1994 WL 114319, at *2 (citing *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474 (Ohio 1985)). The owner only has a duty to warn invitees of latent or concealed dangers when the owner has knowledge or reason to know of the danger. *Snyder v. Walmart, Inc.*, No. 21-3989, 2022 WL

4

17330174, at *2 (6th Cir. Nov. 29, 2022) (citing *Klauss v. Marc Glassman, Inc.*, No. 84799, 2005 WL 678984, ¶13 (Ohio Ct. App. Mar. 24, 2005)).

The parties agree Yinger, as a potential Speedway customer, was a business invitee. *See* Doc. No. 23 at PageID 223; Doc. No. 25 at PageID 251. As such, Speedway owed Yinger a duty of ordinary care and was only obligated to warn her of known latent or concealed dangers. *Wilson*, 1994 WL 114319, at *2; *Snyder*, 2022 WL 17330174, at *2 (citing *Paschal*, 480 N.E.2d at 475). If the danger was open and obvious, Speedway did not need to warn Yinger because, under Ohio law, it is assumed she would see the danger and protect herself. *Wilson*, 1994 WL 114319, at *2. The open and obvious danger doctrine is not an affirmative defense, but rather impacts the threshold issue of whether a duty of care exists. *Armstrong v. Best Buy Co.*, 788 N.E.2d 1088, 1091 (Ohio 2003). However, under Ohio law, "if 'attendant circumstances' exist, *i.e.,* circumstances that inference with a person's ability to apprehend the danger, the open and obvious danger doctrine may not prevent recovery." *Hernandez-Butler v. Ikea U.S. East, LLC*, 435 F. Supp. 3d 816, 823 (S.D. Ohio 2020).

Generally, whether a danger is open and obvious presents a question of law for the Court to decide. *See Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 725 (6th Cir. 2012); *Armstrong*, 788 N.E.2d at 1091-92. Ohio courts have routinely held wrinkles in rugs constitute an open and obvious condition, especially when, as here, the rug is in a well-lit area, a noticeably different color from the rest of the floor, and nothing blocks the plaintiff's view of the rug. *See, e.g.*, *Henry v. Wal-Mart Stores E. LP*, No. 3:19-CV-176, 2021 WL 4132350, at *4-5 (S.D. Ohio Sept. 10, 2021) (granting summary judgment under the open and obvious danger doctrine where the rug sat in well-lit, unobstructed area, the rug and floor were different colors, the plaintiff did not know whether the mat was folded prior to the fall, and the plaintiff looked straight ahead before the fall);

5

*Mostyn v. CKE Restaurants, Inc.*, No. WM–08–018, 2009 WL 1741640, at *3-4 (Ohio Ct. App. June 19, 2009) (finding the business owed no duty under the open and obvious doctrine where a business invitee tripped and fell on a rug adjacent to transparent doors, where, as here, the invitee, did not see the rug, nothing blocked the invitee's view of the rug, and the rug was a different color than the floor tile, making it distinguishable); *Martin v. Christ Hosp.*, No. C-060639, 2007 WL 1650043, at *4 (Ohio Ct. App. June 8, 2007) ("[R]easonable minds could only conclude that the defective rug [that was visible through the door and a different color than the floor] was discoverable through ordinary inspection so that [defendant] could have reasonably expected its invitees to discover the danger and take appropriate actions to protect themselves"); *Wilson*, 1994 WL 114319, at *3 (affirming trial court's open and obvious danger conclusion where plaintiff testified she had no trouble seeing the rug, the rug was a different color than the floor, and nothing obstructed her view of the rug).

      Having carefully reviewed the record, the surveillance videos and pictures taken after Yinger's fall show the rug is in a well-lit area adjacent to transparent doors, the rug is a different color from the surrounding floor, and nothing obstructed her view of the rug. *See* Doc. No. 21 at PageID 150-52, 155, 205-212; Doc. No. 25-1 at PageID 266-70. While Yinger testified that she did not look at the rug as she entered the store (she looked straight ahead), she knew Speedway normally placed a rug inside the entrance and testified that the wrinkles in the rug caused her to trip on the rug. Doc. No. 21 at PageID 152, 154. Thus, the evidence establishes the rug in this case constitutes an open and obvious hazard. The Court is sensitive to Yinger's injuries, but the Court must apply the law as stated. As applied in this case, Speedway owed no duty to Yinger, meaning Speedway cannot be liable for negligence, and Speedway is entitled to summary judgment as a matter law. *See Armstrong*, 788 N.E.2d at 1091-92.

Yinger attempts to avoid the open and obvious danger doctrine by alleging attendant circumstances contributed to her fall. Doc. No. 25 at PageID 261-65. "Attendant circumstances are those distractions that tend to reduce the degree of care that ordinary individuals would exercise under normal circumstances by [1]'divert[ing] the attention of the injured party, [2] significantly enhanc[ing] the danger of the defect, [3] and contribut[ing] to the injury.'" *Autry v. Wal-Mart Stores, Inc.*, 780 Fed. App'x 353, 354-55 (6th Cir. 2019) (per curiam) (quoting *McCoy v. Wasabi House, LLC*, 104 N.E.3d 102, 114 (Ohio Ct. App. 2018)). Attendant circumstances "must pose a significant distraction, and cannot include regularly encountered, ordinary, or common circumstances." *Lambert v. Up Cincinnati Race, LLC*, 204 N.E.3d 782, 790 (Ohio Ct. App. 2022) (internal quotations omitted); *see, e.g.*, *McCoy*, 104 N.E.3d at 114 ("'normal traffic' of people coming in and out of a restaurant is not a circumstance so significant or unusual as to rise to the level of attendant circumstances"); *Humble v. Boneyard Westlake, L.L.C.*, No. CV–15–841439, 2016 WL 7302626, at *2 (Ohio Ct. App. Dec. 15, 2016) ("The breadth of the attendant circumstances exception does not encompass the common or the ordinary"); *McConnell v. Margello*, No. 06AP-1235, 2007 WL 2729429, at *6 (Ohio Ct. App. Sept. 20, 2007) (finding that "static merchandise at or above eye level" in a retail store did not qualify as an attendant circumstance).

Yinger alleges three attendant circumstances: (1) the door's metal border (*i.e.*, the "threshold"); (2) the high store traffic; and (3) the products, signs, and advertisements. Doc. No. 25 at PageID 262-65. However, Yinger does not cite any cases holding that these qualify as attendant circumstances. *See id.*

Reviewing the videos, photos, and testimony, it is apparent that Yinger encountered "common" or "ordinary" distractions that one would expect in a gas station convenience store.

7

Doc. No. 21 at PageID 151-152, 155, 205-212; Doc. No. 25-1 at PageID 266-70. A metal border around the door is not uncommon in any retail setting, let alone a gas station convenience store. *See* Doc. No. 21 at 205. As Yinger noted in her deposition, Speedway commonly has high traffic in the morning, which means it is not so significant or unusual to rise to the level of an attendant circumstance. *See id.* at PageID 154 ("[I]t's 7:25 in the morning. It's very busy during that time. It's rush hour"); Doc. No. 29 at PageID 393; *McCoy*, 104 N.E.3d at 114. Yinger even acknowledges, "Speedway is known, like many other retail and fast food businesses, for their window stickers and ad placements"—suggesting this a common or regularly encountered distraction found in a gas station convenience store. Doc. No. 25 at PageID 264. Nothing Yinger points to is so unusual as to rise to the level of an attendant circumstance. *See McCoy*, 104 N.E.3d at 114; *Humble,* 2016 WL 7302626, at *2.

The Court thus finds the wrinkles in the rug by which Yinger fell were open and obvious. Accordingly, Speedway's motion merits granting.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Speedway's motion for summary judgment (Doc. No. 23) and **TERMINATES** this case on the docket.

**IT IS SO ORDERED.**

December 20, 2024      s/*Michael J. Newman*
                       Hon. Michael J. Newman
                       United States District Judge